# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 19-260V

| | |
|---|---|
| SCOTT SCHEFFLER, | |
| Petitioner, | **UNPUBLISHED** |
| v. | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Filed: October 3, 2022 |
| Respondent. | Interim Attorneys' Fees and Costs |

*Anne Toale*, Maglio, Christopher, and Toale, Sarasota, FL, for Petitioner
*Austin Egan*, U.S. Department of Justice, Washington, DC, for Respondent

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On February 15, 2019, Scott Scheffler ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that he developed Henoch-Schonlein purpura ("HSP")/IgA vasculitis from the Hepatitis A and B (Twinrix) vaccines he received on May 2, 2018 and/or a second dose of Twinrix he received on June 2, 2018. Pet. at 1, 5.

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on June 1, 2022, requesting

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

a total of $100,891.28. Fees App. at 4, ECF No. 39. Respondent did not file a response to Petitioner's motion.

I hereby **GRANT** Petitioner's application award a total of **$99,391.28** in interim attorneys' fees and costs.

I.    **Legal Standard**

A.  **Interim Attorneys' Fees and Costs**

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

B.  **Good Faith**

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors

3

the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II. Discussion

### A. Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees). As Petitioner notes, this case is unlikely to be resolved in the near future and Petitioner's counsel has incurred significant expert costs in the course of litigation. Fees App. at 1. Petitioner's counsel has indicated that she will "suffer from undue hardship if no award is made." *Id.* at 2. Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

### B. Good Faith and Reasonable Basis

Respondent did not file a response to Petitioner's fees application, and therefore has not raised any objection to the good faith or reasonable basis for this claim. I find that the petition was filed in good faith.

With regards to reasonable basis, Petitioner has submitted four expert reports; two from Dr. Lindsay Lally, a board certified rheumatologist, and two from Dr. Michael Lee, a board certified cardiologist at the University of California Los Angeles School of Medicine. *See* Exs. 17, 34, 40, 41; *see also* Exs. 18 (hereinafter "Lally CV"); 35 (hereinafter "Lee CV"). Dr. Lally opined that the exact mechanism for IgA vasculitis is unknown but theorized an upregulation of immune response following vaccination can lead "to an exuberant host response inappropriately resulting in increased IgA production, and immune complex formation with resultant deposition into small blood vessels leading to disease propagation." Ex. 17 at 6. A number of rheumatologic conditions are known to follow hepatitis B vaccination. *Id.* at 7. Lastly, Hepatitis A and B infections are associated with IgA vasculitis, albeit rarely. *Id.*; *see also* Ex. 29. This constitutes sufficient evidence to establish a reasonable basis for the claim.

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

**C. Attorneys' Fees**

Petitioner requests a total of $71,308.50 in attorneys' fees. Fees App. at 3.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

---

[3] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL

Petitioner's attorney, Ms. Anne Toale, requests an hourly rate of $378.00 for work performed in 2017; $402.00 for work performed in 2018; $420.00 for work performed in 2019; $445.00 for work performed in 2020; $475.00 for work performed in 2021; and $500.00 for work performed in 2022. Ex. 53 at 2-3. Ms. Toale also requests compensation for her colleague Ms. Diana Stadelnikas: $396.00 for work performed in 2018, $470.00 for work performed in 2021, and $490.00 for work performed in 2022. Ex. 50 at 26. Lastly, Ms. Toale requests compensation for MCT paralegals ranging between $140.00 to $170.00 per hour for work performed between 2018-2022. *Id.*

This request is consistent with what I and other special masters have previously awarded Ms. Toale and the MCT firm. *See, e.g., Brienen v. Sec'y of Health & Hum. Servs.,* No. 20-668V, 2022 WL 3100319 (Fed. Cl. Spec. Mstr. Jun. 30, 2022); *Barber v. Sec'y of Health & Hum. Servs.*, No. 19-607V, 2022 WL 2663230 (Fed. Cl. Spec. Mstr. Jun. 30, 2022); *Correa v. Sec'y of Health & Hum. Servs.*, No. 19-592V, 2022 WL 2222485 (Fed. Cl. Spec. Mstr. May 24, 2022); *Stolberg v. Sec'y of Health & Hum. Servs.*, No. 17-1815V, 2021 WL 5410532 (Fed. Cl. Spec. Mstr. Oct. 25, 2021). Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*,

5634323.

No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel has provided a breakdown of hours billed. *See* Ex. 51. I find the hours to be largely reasonable however, I will deduct for what I believe to be excessive hours collecting medical records. Over 2.5 years, I counted approximately 20 hours dedicated to collecting medical records, and most of those hours involved communicating with Norton Healthcare and Baptist Health. Based on my experience in reviewing applications for attorneys' fees and costs, I find this amount of time to be excessive. I also note that there were a number of errors made by the paralegals which resulted in the excessive time billed.[4] I find that a reasonable deduction is $1,500.00.

Total attorneys' fees to be awarded: **$69,808.50**

**D. Reasonable Costs**

Petitioner requests a total of $29,582.78 in costs. Specifically, Petitioner requests $400.00 for the Court's filing fee; $7,250.00 for Dr. Lally's expert fee; $13,475.00 for Dr. Lee's expert fee; $4,500.00 for Dr. Wright's expert fee; $2,500.00 for Guidepoint Global for an expert search; $209.80 for medical literature; $173.00 for records requests; $180.77 for legal research; $194.34 for mail/shipping expenses; $698.87 for travel expenses; and $1.00 PACER fee. Documentation for the Court's filing fee, legal research, medical literature, records requests, and Ms. Toale's travel to visit Petitioner have been provided and I grant these costs in full. I discuss the remaining expenses below.

      1. Petitioner's Expert Costs for Dr. Lindsay Lally

Petitioner requests an hourly rate of $500.00 for 14.5 hours of work performed by Dr. Lally, for a total of $7,250.00. Dr. Lally received her medical degree from Weill Cornell Medical College and performed an internal medicine residency and rheumatology fellowship. Lally CV at 2. Dr. Lally is currently an assistant professor of medicine at Weill Cornell Medical College and Hospital

---

[4] *See* entry on 9/30/2019 Review records from Norton Health Care and determine as duplicates; entry on 11/5/2019 Review correspondence from Norton Healthcare regarding notice of rejection; entry on 11/6/2019 Review correspondence from Norton Healthcare rejecting medical records request. Update request and resubmit through online portal. Update notes and follow up reminders accordingly; entry on 11/14/2019 Review correspondence from Baptist Health – Louisville regarding notice of rejection. Update file; entry on 1/29/2020 Review and respond to correspondence from Norton Healthcare rejecting request for records. Update notes to file.

7

of Special Surgery. *Id.* at 5. Dr. Lally has published six peer-reviewed papers and three book chapters. This is Dr. Lally's first time as an expert in the Program. Her reports were detailed and offered a well-reasoned opinion as to how the Twinrix vaccine could have caused Petitioner's IgA vasculitis. *See* Ex. 17 at 5-10. As such, I believe Dr. Lally should be awarded her requested hourly rate of $500.00. The number of hours Dr. Lally expended on this case is reasonable, thus I grant her expert fees in full.

   2. Petitioner's Expert Costs for Dr. Michael S. Lee

Petitioner request an hourly rate of $500.00 for 26.95 hours of work performed by Dr. Lee, for a total of $13,475.00. Dr. Lee received his medical degree from St. George University School of Medicine and performed a cardiology fellowship at St. Luke's-Roosevelt Hospital Center and at the College of Physicians and Surgeons at Columbia University, and an interventional cardiology fellowship at Cedars-Sinai Medical Center at the UCLA School of Medicine. Lee CV at 1. Dr. Lee is board certified in internal medicine, clinical cardiology, and interventional cardiology. *Id.* Dr. Lee is currently an associate clinical professor at the UCLA School of Medicine. *Id.* at 2. Dr. Lee has published 117 peer-reviewed papers, 44 abstracts, and 11 book chapters. *Id.* at 34-46, 53-57. This is also Dr. Lee's first time as an expert in the Vaccine Program. Dr. Lee provided two reports on the impact of Petitioner's aortic valve replacement in relation to IgA vasculitis. *See generally* Exs. 34, 41. Dr. Lee opined that he did not believe that Petitioner's aortic regurgitation was consistent with chronic aortic regurgitation, and that it was more consistent with Petitioner's development of IgA vasculitis caused by the Twinrix vaccine. Ex. 34 at 9. Dr. Lee is well credentialed and provided substantive reports. As such, I believe Dr. lee should be awarded his requested hourly rate of $500.00. The number of hours Dr. Lee expended on this case is reasonable, thus I grant his expert fees in full.

   3. Petitioner's Expert Costs for Dr. C. Michael Wright

Petitioner requests an hourly rate of $450.00 for 10 hours of work performed by Dr. Wright, for a total of $4,500.00. Ex. 51 at 28. Dr. Wright spent approximately 7 hours reviewing medical records and medical literature, and 3 hours writing an expert report that was not submitted. *See id.* These hours seem appropriate for the tasks performed. Dr. Wright has not practiced before the Program before and has not been awarded his requested rate. Dr. Wright's CV was not submitted in this matter, nor was his expert report. A Google search for Dr. Wright shows that he is a cardiologist at the University of California San Diego Health. C. Michael Wright, UC San Diego Health, https://providers.ucsd.edu/details/1770830911/primary-care (last visited Sep. 27, 2022). Dr. Wright received his medical degree from Mount Sinai School of Medicine, performed his residency at Washington University School of Medicine in St. Louis, and is board certified in internal medicine and cardiovascular diseases. *See id.* I see no reason not to award Dr. Wright's requested fees; accordingly, I grant them in full.[5]

   4. Other Expenses

---

[5] I note that in finding Dr. Wright's expert work reasonable, I do not specifically endorse any particular hourly rate billed by Dr. Wright. Rather, I find the total amount billed for the work is reasonable in light of the invoice submitted.

Petitioner requests a total of $194.34 for mailing and shipping costs. I note that most documentation was provided, but 4 expenditures totaling $63.55 were not. I will grant those costs but warn counsel that costs without documentation will not be awarded in the future.

Total costs to be awarded: **$29,582.78**

### III.     Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT** Petitioner's application, as follows:

A lump sum in the amount of **$99,391.28**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and his attorney, Ms. Anne Toale

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[6]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.